# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 8, 2009

## STATE OF TENNESSEE v. REGINALD MARCEL GIBBS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-A-777     Monte Watkins, Judge**

_____

**No. M2008-02269-CCA-R3-CD - Filed December 17, 2009**

_____

The defendant, Reginald Marcel Gibbs, was convicted by a Davidson County Criminal Court jury of aggravated robbery, a Class B felony, and pled guilty to possession of drug paraphernalia, a Class A misdemeanor, and felon in possession of a handgun, a Class E felony. He was sentenced to fifteen years as a Range II offender on the aggravated robbery conviction; eleven months, twenty-nine days on the possession of drug paraphernalia conviction; and five years as a Range III offender on the felon in possession of a handgun conviction. The court ordered that the fifteen and five-year sentences be served consecutively for an effective term of twenty years in the Department of Correction. On appeal, the defendant challenges the sufficiency of the convicting evidence and the sentence imposed by the trial court. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Dumaka Shabazz, Nashville, Tennessee, for the appellant, Reginald Marcel Gibbs.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

This case arises out of the robbery of a visiting businessman from South Carolina outside a Days Inn motel in Nashville in November 2005. For his involvement, the defendant was indicted on charges of aggravated robbery, possession of drug paraphernalia, felon in possession of a handgun, and theft of property less than $500. Prior to trial, the State dismissed the theft of property

charge, and the defendant pled guilty to possession of drug paraphernalia and felon in possession of a handgun. A trial commenced on the aggravated robbery charge.

## State's Proof

The victim, Don Sprouse, testified that he traveled to Nashville for business in November 2005 along with a few other people. He recalled that one of his associates had arranged for the group to stay at a Days Inn motel during their stay. After checking in around 9:00 p.m. on the night in question, the victim backed his vehicle into a parking spot, and a blue truck stopped in front of him and the occupants inquired of the time. He stated that a black male, identified as the defendant, and a white female were in the blue truck, and the time was 9:41 p.m.

The victim testified that he unloaded his suitcase and briefcase, locked his truck, and progressed toward his room. As he was walking, he encountered the couple again. The defendant pointed a cocked gun at him and demanded that the victim give the money in his pocket to the woman. The victim gave the woman the money and then the defendant demanded his wallet, which the victim handed to the defendant. As the couple left, the defendant said, "[I]f you call the police I'll come back and kill you[.]" The victim said that he felt helpless.

The victim testified that the police responded to the scene, and he provided a description of the suspects and the vehicle they were driving. He stated that the lighting where the robbery occurred was sufficient for him to see the weapon and the person holding the weapon. He said that the defendant did not have anything covering his face to hide his features.

The victim stated that he had $1200 that he used to pay for fuel in the trucks and the motel bills, so the defendant took the amount of cash left after those expenditures. His wallet contained his driver's license, credit cards, social security card, and receipts from the trip. His credit cards were used after the robbery without his permission.

On cross-examination, the victim acknowledged that he did not make an identification of the defendant by either line-up or photographic array prior to the day he testified. He said that of the receipts shown to him by the State, two were possibly his transactions. However, he acknowledged that if the receipt showed that the item purchased was a cigar or if the transaction took place after 9:41 p.m., he did not make the transaction. The victim said that he could not remember what kind of hat the defendant wore at the time of the robbery, nor could he recall the number of the motel room he stayed in that night.

Officer Bonita Blue with the Metropolitan Nashville Police Department testified that she responded to the robbery call at the Days Inn motel the evening of November 28, 2005. She said that she spoke with the victim who was "very upset and angry" about the incident. The victim provided her with a general description of the suspects and the vehicle possibly involved, which she relayed to the dispatcher. The victim described the defendant as approximately 5'8" tall, 225 to 250 pounds, black hair, and wearing a white sweatshirt with blue jeans.

Officer Blue acknowledged that her report documented that the victim said the defendant showed him a gun, not pointed a gun at him. She said that it was not brought to her attention that the gun was cocked. Officer Blue clarified though that she remembered certain things that were not written down in the report, and she remembered the victim demonstrating that the gun was pointed at him. She also stated that she noted in her report that the victim told her the amount stolen was $3000.

Officer Brian Myatt with the Metropolitan Nashville Police Department testified that he was working as a patrol officer during the early morning hours of November 28, 2005, when he stopped the defendant driving a blue Ford F-150 pickup truck with two women inside. When Officer Myatt asked the defendant to exit the truck, he observed a handgun in plain view between the defendant's legs. In response, Officer Myatt drew his weapon, called for backup, and placed the defendant in handcuffs. Afterwards, Officer Myatt inspected the defendant's handgun and discovered that it was loaded.

Officer Myatt testified that a search of the defendant's truck revealed the victim's driver's license and three glass crack pipes. Approximately $138 and credit card receipts with the victim's name were discovered on the defendant's person. When Officer Myatt removed the defendant from the backseat of his police cruiser after transport from the traffic stop to booking, Officer Myatt checked the seat and found the victim's credit card tucked in between the seat. Officer Myatt said that the defendant was the first person in the backseat of his cruiser that night, and he always checked the seat for contraband prior to his shift. Officer Myatt recalled that the defendant was wearing a white sweatshirt and blue running pants when he was arrested.

### Defendant's Proof

The defendant testified that on the night he was pulled over, he was driving around with two women whom he "pimped out" at times and they were "looking for dope." He said that the officer pulled him over for operating a stolen vehicle, but the vehicle was not stolen. He explained that two people, Doug and Susan, gave him the truck earlier that evening in exchange for a gram of crack. The defendant admitted that the officer discovered a gun, credit card, and driver's license in the vehicle and credit card receipts on his person but explained that those items were in the vehicle when it was given to him. He also admitted using the credit card to purchase gasoline for the truck and phone minutes. The defendant further admitted stealing a license plate off a random vehicle and putting it on the truck he was driving. The defendant denied ever seeing the victim before and any involvement in the robbery.

Following the conclusion of the proof, the jury convicted the defendant of aggravated robbery.

**Sentencing Hearing**

At the sentencing hearing, the defendant testified that he had a severe drug problem, which was the cause of his criminal record. He asked the court to take into consideration that he had been accepted into a two-year treatment program at The Academy. After hearing argument from the parties, the trial court sentenced the defendant as a Range II multiple offender to fifteen years on the aggravated robbery conviction; eleven months, twenty-nine days on the possession of drug paraphernalia conviction; and five years as a Range III persistent offender on the felon in possession of a handgun conviction. The court ordered that the fifteen and five-year sentences be served consecutively for an effective term of twenty years in the Department of Correction and determined that the misdemeanor sentence was satisfied with time served.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence was insufficient for the jury to convict him of aggravated robbery. When reviewing a challenge to the sufficiency of the convicting evidence, we note that the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear when accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (2006).

In the light most favorable to the State, the evidence shows that the victim had just backed into a parking spot at the Days Inn motel when the defendant and a female friend pulled in front of him and inquired of the time. As the victim was walking toward his room, the couple approached him, and the defendant demanded, as he pointed a gun at the victim, that the victim give his money to the woman. After the victim passed his money to the woman, the defendant demanded the victim's wallet, threatened the victim, and the couple absconded. The victim testified that the lighting was sufficient for him to view the defendant, and the defendant did not appear to hide his face during the incident.

After the defendant was arrested, a loaded gun, the victim's driver's license, cash, and receipts from the victim's credit card were found either on the defendant's person or in the blue truck he was driving. The victim's credit card was found stuffed between the backseat of Officer Myatt's police cruiser after the defendant was transported to booking.

The defendant challenges the credibility of the victim's identification in that, among other things, he could not identify certain credit card receipts, remember what type of hat the defendant was wearing, or remember what room number he was staying in that night. He also alleges inconsistencies in the victim's testimony at trial and what was written in Officer Blue's report with regard to whether the defendant "showed" or "pointed" the gun and with regard to the amount of money stolen. With regard to the inconsistency in whether the defendant "showed" or "pointed" the gun, Officer Blue testified that she remembered the victim demonstrating that the gun was pointed at him. In any event, any conflicts in the evidence and the credibility of the witnesses' testimony were issues resolved by the jury as the trier of fact. Therefore, we conclude that the evidence was sufficient for a rational trier of fact to convict the defendant of aggravated robbery.

## II. Sentencing

The defendant argues that the trial court erred in sentencing him to confinement and ordering that his sentences be served consecutively. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn.

Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

### A. Manner of Service

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6) (2006)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2006).

A defendant who receives a sentence of ten years or less is eligible for probation, subject to certain exceptions. Tenn. Code Ann. § 40-35-303(a) (2006). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is on the defendant to show the denial of probation was improper. Id.; see also State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing Ashby, 823 S.W.2d at 169); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9-10. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id. Also relevant is whether a sentence of probation would unduly depreciate the

seriousness of the offense.  See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

To qualify for placement in community corrections, an offender must meet all of the following criteria:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(F) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1).

Alternatively, the "special needs" provision provides that an offender may be considered eligible for community corrections, even if usually considered unfit for probation, if he has a history of chronic alcohol or drug abuse, or mental health problems, but his special needs are treatable and could be served best in the community instead of in a correctional institution.  Id. § 40-36-106(c). To be eligible for community corrections pursuant to subsection (c), however, a defendant must first be eligible for probation pursuant to Tennessee Code Annotated Section 40-35-303.  See State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989).  Even where a defendant meets the eligibility requirements of the statute, the defendant is not automatically entitled to participate.  See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Id. § 40-35-103(1) (2006). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

Here, the defendant is a multiple offender convicted of a Class B felony and a persistent offender convicted of a Class E felony; therefore, he was not considered a favorable candidate for alternative sentencing options. Moreover, our review supports the trial court's imposition of a sentence of confinement. At the time of sentencing, the thirty-seven-year-old defendant had a criminal record spanning more than fifteen years and involving over forty convictions. He admitted to having a lifestyle involving drugs, prostitution, and theft. He has had a sentence of community corrections revoked in the past. The presentence report illustrates that the defendant has previously received treatment for his drug use, clearly to no avail. Thus, his potential for rehabilitation is questionable. We discern no error in the sentence imposed by the trial court.

## B. Consecutive Sentencing

The defendant argues that the trial court erred in sentencing him consecutively based on a finding that he was a dangerous offender without making the additional Wilkerson findings.

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

. . . .

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]

Tenn. Code Ann. § 40-35-115(b) (2006). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

In ordering consecutive sentences, the trial court stated, "[H]e's a criminal. He's devoted his life to committing criminal acts, many were misdemeanors, but they are still criminal acts." See Tenn. Code Ann. § 40-35-115(b)(1). The court also found that the defendant had an extensive criminal history, id. § 40-35-115(b)(2), and was a dangerous offender with little regard for human life. Id. § 40-35-115(b)(4).

The defendant is correct that the trial court failed to make the additional Wilkerson findings in concluding that he was a dangerous offender. However, the defendant completely disregards that the trial court based its sentencing determination on two additional criteria, one alone being sufficient to justify consecutive sentencing. See State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The presentence report reflects that the defendant has a criminal record containing at least forty-four convictions, albeit primarily misdemeanors, and no verified employment since the early 1990's. The defendant admitted at trial to selling drugs and promoting prostitution. This evidence supports a finding that the defendant is a professional criminal and an offender whose record of criminal activity is extensive. See Tenn. Code Ann. § 40-35-115(b)(1), (2). We conclude that consecutive sentencing is supported by the record in this case.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE